## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cr-0001 |
| ) | |
| ELEUTERIO MURILLO GOMEZ, RANDAR ) | |
| VASQUEZ MUNOZ, and MAINOR SALAZAR ) | |
| MONTERO, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ATTORNEYS:**

**DELIA L. SMITH, UNITED STATES ATTORNEY**
**ADAM F. SLEEPER, ASSISTANT UNITED STATES ATTORNEY**
UNITED STATES ATTORNEY'S OFFICE
ST. THOMAS, U.S. VIRGIN ISLANDS
    *FOR THE UNITED STATES OF AMERICA*

**JOSEPH A. DIRUZZO, III, ESQ.,**
DIRUZZO & COMPANY
FT. LAUDERDALE, FLORIDA
    *FOR DEFENDANT RANDAR VASQUEZ MUNOZ*

### MEMORANDUM OPINION

**MOLLOY, Chief Judge.**

    **BEFORE THE COURT** is Defendant Randar Munoz's ("Munoz") Motion to Declare Department of Homeland Security ["DHS"] Actions Unconstitutional & Invalidated/Set Aside All Agency Action. (ECF No. 29.) For the reasons stated below, the motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

    On April 9, 2019, Secretary of DHS, Kirstjen Nielsen ("Nielsen"), signed a Memorandum for the Secretary from General Counsel, stating: "By approving the attached document, you will designate your desired order of succession for the Secretary of Homeland Security in accordance with your authority pursuant to Section 113(g)(2) of title 6, United States Code." (ECF No. 46-1 at 69.) Attached to the April 9, 2019 Memorandum for the

Secretary was a document styled "Amending the Order of Succession in the Department of Homeland Security" (ECF No. 46-1 at 70), stating:

> Annex A of DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof:
>
> Annex A. Order for Delegation of Authority by the Secretary of the Department of Homeland Security.
>
> 1. Deputy Secretary of Homeland Security;
> 2. Under Secretary for Management;
> 3. Commissioner of U.S. Customs and Border Protection;
> 4. Administrator of the Federal Emergency Management Agency;
> 5. Director of the Cybersecurity and Infrastructure Security Agency;
> 6. Under Secretary for Science and Technology;
> 7. Under Secretary for Intelligence and Analysis
> 8. Administrator of the Transportation Security Administration;
> 9. Director of U.S. Immigration and Customs Enforcement;
> 10. Director of U.S. Citizenship and Immigration Services;
> 11. Under Secretary for Strategy, Policy, and Plans;
> 12. General Counsel;
> 13. Deputy Under Secretary for Management;
> 14. Deputy Commissioner of U.S. Customs and Border Protection;
> 15. Deputy Administrator of the Transportation Security Administration;
> 16. Deputy Director of U.S. Immigration and Customs Enforcement;
> 17. Deputy Director of U.S. Citizenship and Immigration Services;
> 18. Director of the Federal Law Enforcement Training Center.
>
> No individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation.

On April 10, 2019, Nielsen resigned from her position as Secretary of DHS and issued a "Farewell Message from Secretary Kirstjen M. Nielsen," stating that United States Customs and Border Protection ("USCBP") Commissioner Kevin McAleenan ("McAleenan") "will now lead DHS as your Acting Secretary." (ECF No. 46-3.) On November 8, 2019, McAleenan signed an "Amendment to the Order of Succession for the Secretary of Homeland Security," (ECF No. 46-1 at 71), containing "Annex A, Order for Delegation of Authority by the Secretary for the Department of Homeland Security," providing as follows:

> 1. Deputy Secretary of Homeland Security;
> 2. Under Secretary for Management;
> 3. Commissioner of the U.S. Customs and Border Protection;
> 4. Under Secretary for Strategy, Policy, and Plans;

> 5. Administrator and Assistant Secretary of the Transportation Security Administration;
>
> 6. Administrator of the Federal Emergency Management Agency;
>
> No individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation.

McAleenan resigned as Acting Secretary of DHS on November 13, 2019, (ECF No. 46-1, Blackwell Decl. ¶ 7), when the Under Secretary for Strategy, Policy, and Plans, Chad Wolf ("Wolf"), assumed the title of Acting Secretary of DHS and designated the Principal Deputy Director of U.S. Citizenship and Immigration Services, Kenneth Cuccinelli ("Cuccinelli"), as the Senior Official Performing the Duties of Deputy Secretary of Homeland Security.

On August 14, 2020, the U.S. Government Accountability Office ("GAO") issued a decision in the Matter of: Department of Homeland Security—Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security, stating:

> Upon Secretary Kirstjen Nielsen's resignation on April 10, 2019, the official who assumed the title of Acting Secretary had not been designated in the order of succession to serve upon the Secretary's resignation. Because the incorrect official assumed the title of Acting Secretary at that time, subsequent amendments to the order of succession made by that official were invalid and officials who assumed their positions under such amendments, including Chad Wolf and Kenneth Cuccinelli, were named by reference to an invalid order of succession. We have not reviewed the legality of other actions taken by these officials; we are referring the matter to the Inspector General of DHS for review.

(ECF No. 29-1 at 1.)

On November 26, 2020, the United States Coast Guard ("USCG") arrested Munoz and his co-defendants Murillo Gomez Eleuterio ("Eleuterio") and Mainor Salazar Montero ("Montero") in international waters approximately one hundred fifteen nautical miles off the coast of Isla De Malpelo, Columbia. (ECF No. 1-1.) Thereafter, a grand jury returned an indictment charging Munoz, Eleuterio and Montero with possession of a controlled substance with intent to distribute while on board a vessel subject to the jurisdiction of the United States, and conspiracy to do the same. (ECF No. 31.)

## II. LEGAL STANDARD

The Appointment Clause of the United States Constitution provides that the President

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . all . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2. "The principle of separation of powers is embedded in the Appointments Clause." *Freytag v. Comm'r*, 501 U.S. 868, 882 (1991).

The Federal Vacancies Reform Act of 1998 ("FVRA") provides that, if an officer of an executive agency, such as the Secretary of DHS, "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office," "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a)(1). "An action taken by any person who is not acting under section 3345, 3346, or 3347, or as provided by subsection (b), in the performance of any function or duty of a vacant office to which this section and sections 3346, 3347, 3349, 3349a, 3349b, and 3349c apply shall have no force or effect." 5 U.S.C.A. § 3348(d)(1). FVRA's "Section 3345 and 3346 are the exclusive means for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate," unless another statute provides an exception. 5 U.S.C.A. § 3347(a)(1). The Homeland Security Act of 2002 ("HSA") contains such an exception providing for succession in case of a vacancy in the position of DHS Secretary. "Notwithstanding chapter 33 of Title 5, the Under Secretary for Management shall serve as the Acting Secretary if by reason of absence, disability, or vacancy in office, neither the Secretary nor Deputy Secretary is available to exercise the duties of the Office of the Secretary." 6 U.S.C.A. § 113 (g)(1). "Notwithstanding chapter 33 of Title 5, the Secretary may designate such other officers of the Department in further order of succession to serve as Acting Secretary." 6 U.S.C.A. § 113 (g)(2).

### III. DISCUSSION

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 5 of 10

Munoz asserts that the USCG, which is part of DHS, "interdicted the Defendants in international water, ordered them to 'heave to,' took the Defendants into custody, [ ] transported them to Florida," and subsequently transported them to St. Thomas. According to Munoz, [a]ll of these actions occurred . . . when DHS was headed in violation of the applicable statutory regime and, more importantly, in violation of the Appointments Clause." (ECF No. 29 at 12-13.) Munoz contends that Nielsen's Annex A amended the order of succession but not the grounds governed by Annex A, namely, the order of succession if the Secretary was unavailable to act during a disaster of catastrophic emergency. Thus, since Nielsen resigned as opposed to becoming unavailable during a state of emergency, Munoz contends that the agency improperly relied on the Annex A line of succession when naming McAleenan the then acting secretary. Because Munoz believes that McAleenan improperly assumed the role of Acting Secretary upon Nielsen's resignation, he contends that McAleenan's tenure violated the Appointments Clause. Additionally, since Munoz believes McAleenan improperly assumed the role of Acting Secretary, Munoz claims that McAleenan also did not have the authority to appoint Wolf as Acting Secretary. Therefore, Wolf's tenure as Acting Secretary was invalid and in violation of the Appointment clause as well. Because Munoz believes that Wolf's tenure as Acting Secretary violated the Appointment Clause, Munoz argues that all agency action during his tenure should be invalidated, including the interdiction and subsequent arrest of the defendants in this case. *See* ECF No. 29 at 23.

The Government argues that Munoz's Appointment Clause challenge is unclear since his legal analysis addresses whether the Acting DHS Secretaries acted validly pursuant to the HSA, not whether they were nominated and confirmed in accordance with the Appointment Clause, which is unrelated to the HSA succession procedures. (ECF No. 46 at 10-11.) Moreover, the Appointment Clause was not violated because it does not require that a person who acts temporarily as DHS Secretary must be appointed in the manner of a principal officer. The Government also maintains that Nielsen invoked her authority under 6 U.S.C. § 113(g)(2), making valid McAleenan's tenure and, consequently, his designation of Wolf as Acting Secretary.

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 6 of 10

The Court need not determine whether McAleenan and Wolf's tenures as Acting Secretary of DHS violated the HSA and thereby resulted in an Appointments Clause violation. Even assuming arguendo that Wolf assumed the role of Acting Secretary in violation of the Appointments Clause, Munoz is not entitled to the relief sought.

Munoz argues that all DHS action during Wolf's tenure, including acts by individuals in subordinate agencies, are effectively void. Therefore, although there is no allegation that the Coast Guard officers who arrested the defendants on November 26, 2020, were acting under a directive, rule, order, or declaration enacted by Wolf, Munoz contends that any agency act pursuant to a DHS/USCG regulation was still void and unenforceable simply by virtue of the fact that Wolf was not a lawful Acting Secretary at the time of his arrest. However, Munoz offers no support for the proposition that an unlawful appointment of an agency head renders all acts of the agency and its subordinate agencies unenforceable.[1] To accept the proposition that all agency action, including acts of lower-level officials relying on prior lawful delegations of agency authority, is invalid simply because of a technical deficiency would undermine the very foundation of the administrative state. Actions by an unlawfully appointed official may be rendered void, but agencies, particularly agencies responsible for national security, continue to operate as an arm of the Federal Government in the absence of an agency head. *See Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 59 (D.D.C. 2020) ("[B]ecause the Secretary delegated the authority to issue Department rules in 2003, that power is not vested exclusively in the Secretary and is therefore not the type of action that is voided."); *Cf. Cmty. Fin. Servs. Assoc' of Am. v. Consumer Fin. Prot. Bureau*, 51 F. 4th 616, 642 (5th Cir.) (explaining that the remedy for

---

[1] While Munoz refers to cases where the courts have invalidated the actions of the unlawfully appointed official, *see* ECF No. 29 at 22 (citing *Ryder v. United Staes*, 515 U.S. 177 (1995); *Noel Canning v. N.L.R.B.*, 705 F.3d 490 493 (D.C. Cir. 2013), *aff'd* 573 U.S. 513 (2014); *United States v. Providence Journal Co.*, 485 U.S. 693 (1988)), he points to no case supporting the proposition that an invalid appointment necessarily renders the acts of subordinate officials and employees invalid simply by virtue that that they fall below the unlawfully appointed official in the agency hierarchy. The only way the invalidity of an official's appointment has a daisy chain effect is where the lower-level official is relying on an action by the unlawfully appointed official to carry out their duties. That is not the circumstances we have here.

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 7 of 10

unlawful appointments is invalidating the actions that flow directly from the officer's lack of authority to take the challenged action).

While Munoz points to several cases where courts found that an injunction on certain agency action was likely in light of the court's conclusion in those cases that the official's appointment was unlawful, the proposed injunctions were limited to invalidating specific actions that required the appointed official's discretion or approval.[2] Here, we have a fundamentally different situation. Munoz points to no specific action by the Acting Secretary that is relevant in this case. The Coast Guard agents were acting under authority expressly provided to the officers by statute, *see* 14 U.S.C. § 522, and there is no evidence that the agents in this case relied on a new rule, regulation, or directive implemented during Wolf's tenure to carry out the interdiction, arrest, or transport of the defendants. In fact, the Coast Guard officers' decision to interdict and ultimately arrest the defendants did not require approval or review by the Secretary of DHS because prior lawfully appointed officials had already delegated such authority to the Coast Guard well before Wolf's tenure as Acting Secretary.[3] *See* 14 U.S.C. §§ 504-505;[4] 33 C.F.R. § 1.01-1 (effective Dec. 31, 1948);[5] 33 C.F.R. § 1.01-80 (effective June 18, 2002); 33 C.F.R. § 1.01-85. Therefore, Wolf's purportedly unlawful appointment had no effect, let alone prejudice, on the defendants in this case.

---

[2] *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020) and *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020) are the two preliminary injunction cases Munoz refers to in his briefs.

[3] The Court also notes that not only was the Commandant of the Coast Guard delegated the relevant authority at issue here, Admiral Karl Schultz was appointed by the President and then confirmed by the Senate as Commandant of the Coast Guard in May of 2018. *See* PN1706—Vice Adm. Karl L. Schultz—Coast Guard, https://www.congress.gov/nomination/115th-congress/1706/actions. Schultz continued to lead the Coast Guard as Commandant from 2018 through all relevant times pertinent to this prosecution including the interdiction and arrest of Munoz and his co-defendants.

[4] 14 U.S.C. § 505 ("All powers and functions conferred upon the Coast Guard, or the Commandant, by or pursuant to this title or any other law shall, unless otherwise specifically stated, be executed by the Commandant").

[5] Final authority for the performance within the confines of his district of the functions of the Coast Guard, which in general terms are maritime law enforcement, saving and protecting life and property, safeguarding navigation on the high seas and navigable waters of the United States, and readiness for military operations, is delegated to the District Commander by the Commandant. In turn delegations of final authority run from the District Commander to commanding officers of units under the District Commander for the performance of the functions of law enforcement, patrol of marine regattas and parades, and the saving of life and property which come within the scope of their activities. 33 C.F.R. § 1.01-1

Nevertheless, Munoz argues that when it comes to an Appointments Clause violation, there is no need to show prejudice. *See* ECF No. 29 at 23 (citing *Cirko on behalf of Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 152 (3d Cir. 2020). While it is true that no prejudice need be shown in the typical Appointments Clause case, that is because the injured party is directly challenging the actions of the unlawfully appointed official.[6] Where the unlawful appointment is significantly attenuated from the challenged conduct, however, the Court believes an additional showing is necessary to demonstrate that the official's action affected the citizen in some way. For instance, in *United States v. Smith*, the Fourth Circuit determined that even if the President's designation of Matthew Whitaker as the Acting Attorney General violated the Appointments Clause, Whitaker's connection to the defendant's case was too insignificant on its own to entitle the defendant to relief where there was no evidence that Whitaker affected or influenced the agency's handling of the defendant's case. 962 F.3d 755, 766 (4th Cir. 2020) ("Smith must show that Whitaker's tenure somehow affected his proceeding."). In other words, when relying on a root-to-branch theory in an Appointments Clause case, the defendant has the additional burden of showing that the unlawfully appointed official had at least some effect or influence on the specific agency action at issue. The Third Circuit agreed with the reasoning in *Smith* as well, and similarly concluded a showing of prejudice was necessary when the defendant raised the validity of the Attorney

---

[6] For instance, in *Cirko on behalf of Cirko*, the appointment clause challenge involved the administrative law judges (ALJs) presiding over the plaintiffs' case. Thus, since it was the ALJ's conduct at issue, the alleged unlawful appointees' influence over the Plaintiffs' respective cases was obvious. Similarly, in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117 (E.D.N.Y. Nov. 14, 2020); *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020), the plaintiffs were challenging specific acts of the purportedly unlawfully appointed official. Specifically, in *Cuccinelli*, the plaintiff challenged the enforceability of a directive issued by the unlawfully appointed acting Director of the United States Citizenship and Immigration Services. *See Cuccinelli*, 442 F. Supp. 3d at 9. In *Batalla Vidal*, plaintiffs argued that Acting Secretary Wolf was unlawfully appointed and specifically challenged Secretary Wolf's issuance of a memorandum regarding the Deferred Action for Childhood Arrivals ("DACA") program. *See* 501 F. Supp. 3d at 122. And in *Casa de Maryland, Inc.*, plaintiffs challenged Acting Secretary Wolf's promulgation of final rules. *See* 486 F. Supp. 3d at 950. In contrast here, Munoz is challenging agency action (either regulations, the delegation of authority, or the Coast Guard officers' actions themselves) that the appointed official had no involvement in. Accordingly, the Court finds the instant case is more in line with the Third and Fourth Circuit decisions requiring some showing of prejudice before an agency head's unlawful appointment would invalidate the action of lower-level officials within the agency, particularly where the actions were not based on an appointment or act by the head of the agency.

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 9 of 10

General's appointment but challenged the enforceability of the actions of lower-level officials in the agency. *United States v. Brooks*, 841 Fed. App'x 346 (3d Cir. Dec. 29, 2020). The Court believes this approach is appropriate under the circumstances. Were the Court to adopt Munoz's approach here, this particular alleged Appointments Clause violation would result in every single act of every employee or official in the following agencies to be invalid during the tenures of Acting Secretary McAleenan and Wolf: United States Coast Guard, United States Citizenship and Immigration Services (USCIS), U.S. Customs and Border Protection, the Cybersecurity and Infrastructure Security Agency, Federal Emergency Management Agency (FEMA), the Federal Law Enforcement Training Center, United States Immigration and Customs Enforcement ("ICE"), U.S. Secret Service, the Transportation Security Administration. According to Munoz, no decision by a single member of those respective agencies should have any force or effect, regardless of whether the DHS Secretary ever acted on a particular issue concerning that agency. This is nonsensical. Because the Court concludes that, even if Wolf unlawfully assumed the role of Acting Secretary, it is only *his* actions as Secretary that are rendered void, and therefore, Munoz must show that Secretary Wolf's actions affected the interdiction, arrest, and or transportation of the defendants in some way in order for the officers' conduct to be void. Since Munoz makes no such allegation that the agents acted upon an action, directive, order, memorandum, rule, or policy statement issued by Wolf, the Court finds no basis for rendering the Coast Guard officers interdiction, arrest, and transport of Munoz and his co-defendants unlawful or void.

In any event, Munoz is unclear about the practical effect of finding the Coast Guard officers' conduct here invalid. As the Government points out in its response, the United States Attorney's Office—an entity a part of the Department of Justice—is prosecuting the case, and the defendants are currently in the custody of the Bureau of Prisons, which is also not a DHS agency. Therefore, even if the Court were to grant the requested relief, Munoz would remain in custody, and his case would proceed as scheduled. Furthermore, the Government notes that Munoz may be seeking to suppress the evidence, but Munoz never makes such a request in the instant motion.

*United States v. Eleuterio, et al.*
Case No. 3:21-cr-0001
Memorandum Opinion
Page 10 of 10

      Moreover, a request to suppress at this juncture would be fruitless. The deadline to file substantive motions has expired, and when looking at the merits of the case, suppression of evidence surrounding the interdiction and arrest would be inappropriate. Suppression is not mandatory, and a request for such should be granted "only where its deterrence benefits outweigh its substantial social costs." *Penn. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363 (1998) (internal quotation marks omitted). Here, there would be no deterrence benefit. *See Herring v. United States*, 555 U.S. 135, 141 (2009) (emphasizing that the purpose of the exclusionary rule is "deterring Fourth Amendment violations in the future"). The Coast Guard officers, in this case, would have no reason to know if the Secretary of DHS was unlawfully appointed and thus, under Munoz's theory, that all their actions were unenforceable. Therefore, suppression of the evidence in this instance would not likely deter the officers from interdicting or arresting individuals under these circumstances again in the future, seeing as there would be virtually no way for the officers to know that the circumstances existed. *See Davis v. United States*, 564 U.S. 229, 249 (2011) (concluding that excluding evidence is not appropriate where there is no law enforcement officer misconduct and substantial social costs).

      Therefore, with the premises considered, Defendant Munoz' instant motion is denied. An accompanying order of even date will follow.

**Date:** April 15, 2024　　　　　　　　　　　　　/s/ *Robert A. Molloy*
　　　　　　　　　　　　　　　　　　　　　　　**ROBERT A. MOLLOY**
　　　　　　　　　　　　　　　　　　　　　　　**Chief Judge**